## CHANCE v. UNITED STATES.
### No. M-18.

Court of Claims.
March 4, 1935.

1014

Maurice D. Rosenberg and Harvey D. Jacob, both of Washington, D. C., for plaintiff.

Joseph H. Sheppard, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WILLIAMS, Judge.

The plaintiff, receiver of the City Club of Washington, D. C., sues to recover taxes paid on dues and admission fees of the club's members for the period from June, 1924, to April, 1930, amounting to $40,015.25. The taxes involved were collected under the provisions of section 801 of the Revenue Acts of 1918 and 1921, 40 Stat. 1121, 42 Stat. 291, section 501 of the Revenue Acts of

1924 and 1926 (26 USCA § 872 note), or section 413 (a) of the Revenue Act of 1928 (26 USCA § 872). These acts and the applicable Treasury Regulations have been considered by the court in numerous cases. We do not deem it necessary to review the decisions in these cases at length. The rule by which it must be determined whether a club seeking exemption from the tax is or is not a social club within the meaning of the taxing acts is clearly stated in the case of Army & Navy Club of America v. United States, 53 F.(2d) 277, 282, 72 Ct. Cl. 684:

"It is contended on behalf of the plaintiff that the predominant purpose of the club is patriotic and professional and not social. This may be conceded, but this fact is not necessarily controlling. We think it quite clear that the numerous and varied social features of the club show that they are a material part of its activities and not merely incidental to the patriotic work of the club, which could be carried on without them. The evidence shows that they are made an inducement to bring additional members into an organization that needs their financial aid in order to continue its existence, and in this way have become an essential part of those elements which go to determine whether or not a club is a social organization within the meaning of the law. * * *

"It appears that the predominant purpose of the club was to further the interests of the Army and Navy and to advocate and create a public sentiment in favor of 'preparedness.' Had the social element been merely incidental to this purpose, the club would have been exempt from the tax. But, as we have already shown, the social features became an essential element of its activities for the purpose of increasing its membership, aiding in its financial support, and thus helping to carry out its purposes. When the social features are numerous and so used, we think they are not merely incidental, and the club is subject to the tax."

Measured by this rule, the City Club, under the facts disclosed in the findings, must be held to be a "social club" within the meaning of the applicable statutes. Conceding that the predominant purpose of the club was the civic improvement and advancement of the city of Washington, and that its major activities were in the furtherance of that purpose, the many and varied social activities were such as to bring it within the definition of a social club or organization. These activities were not merely incidental to the predominant nonsocial purposes of the club but became and were a material element of its existence. On the reverse side of the application card for associate membership under the caption, "What your dues gives you," various activities of the club are listed, among which are: "Frequent Entertainments—Dances, 'Stag Night,' Family Parties—Many Without Extra Charge;" "Pool, Billiard, Chess, Cards, and Writing Rooms—Always at Your Service;" "A Pleasant Place to Bring Your Business or Social Guests—for Luncheon, Dinner, or an Evening Visit;" "Opportunity to Broaden your Acquaintanceship; Association with the Leading Men of the Community in Business, Social, and Civic Life;" and "A Country Club with 18 holes of Golf and other privileges." The evidence shows that all these social features and activities were regularly utilized by the club's membership. The club also as a regular feature, from October to May in each year, gave musicales which were planned and directed by the club's music director. The club also sponsored and frequently held golf tournaments, boxing matches, midnight frolics, smokers, and basket ball contests. Each member received a ladies' guest card which extended the privileges of the club to all ladies of the family, who, in turn, were permitted to bring guests to the club.

It is clear that the plaintiff is not entitled to recover. The petition is therefore dismissed. It is so ordered.